UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

[UNDER SEAL] 1:17 MJ 3023

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your Affiant, Rachel Hanley, being duly sworn, deposes and states:

### INTRODUCTION

Affiant is an officer or employee of the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA) within the meaning of Section 878(a) of Title 21, United States Code, that is an officer who is empowered by law to conduct investigations, make arrests, and seize property for violations of Title 18, United States Code and Title 21, United States Code.

Affiant is a Special Agent (SA) for the United States Department of Justice, Drug Enforcement Administration (DEA), and has been so employed since August 2010. During Affiant's employment with the DEA, Affiant has been assigned to the Eagle Pass Resident Office (EPRO) in Eagle Pass, TX, the Del Rio Post of Duty (DRPOD) in Del Rio, TX, and the Cleveland Resident Office (CRO) in Cleveland, Ohio.

### TRAINING AND EXPERIENCE

Affiant has been involved in the investigation of various individuals and organizations involved in the manufacturing, distribution, and use of controlled substances.

1

Affiant has conducted surveillance operations and has become familiar with the methods used by individuals engaged in the manufacturing, trafficking, and use of controlled substances. Affiant received specialized training at the DEA Training Academy in Quantico, Virginia in regards to the identification of narcotic substances and the operation of drug trafficking organizations. Affiant has written and conducted numerous search warrants which have resulted in the seizure of large amounts of narcotics and narcotics proceeds. Affiant has also authored Title III affidavits and been the case agent on Title III investigations.

Affiant received specialized training at the DEA Training Academy in Quantico, Virginia, regarding the identification of narcotic controlled substances and the operation of drug trafficking organizations. Affiant has also been involved in the investigation of numerous individuals and organizations involved in the manufacturing, distribution, and use of controlled substances. During Affiant's employment with DEA as a Special Agent, Affiant has also worked in an undercover capacity for the purpose of purchasing and/or delivering controlled substances; and has participated in the preparation of affidavits in support of numerous search and arrest warrants for violations of federal drug laws contained in Title 21, United States Code, as well as in the execution of the same. In addition, Affiant has on numerous occasions, as a Special Agent with DEA, made seizures of contraband, conveyances, currency, drug paraphernalia, and firearms possessed or used in relation to violations of Title 21, United States Code, Section 841 and 846. Affiant has successfully conducted numerous investigations that have resulted in the arrest of numerous drug traffickers and the seizure of significant quantities of drugs and drug-related proceeds. Affiant has further conducted surveillance operations of drug

traffickers and has interviewed numerous persons personally involved in drug trafficking. Affiant has also supervised numerous confidential sources during controlled purchases of narcotics. Through this training and experience, Affiant has become familiar with, and has gained a thorough understanding of the methods, manner and means used by individuals engaged in the unlawful manufacturing, trafficking, and use of controlled substances.

Affiant makes this affidavit in support of a warrant authorizing the arrest of the individual described in Attachment A. This affidavit does not contain each and every piece of information known to Affiant and other investigators, but rather only information sufficient to establish probable cause to support the requested warrant.

## BACKGROUND

1. Affiant is an investigator involved in a criminal investigation concerning **CARL D. PENNY.** Your Affiant has reviewed reports and evidence of, spoken with other investigators regarding, and has been involved in the investigation relating to alleged violations of federal controlled substance laws by **CARL D. PENNY**. Your Affiant affirms that, on or about February 3, 2017, in the Northern District of Ohio, Eastern Division, **CARL D. PENNY**, did conspire to knowingly possess with intent to distribute controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

## PROBABLE CAUSE

2. On February 3, 2017, at approximately 6:37 a.m., agents monitored the court authorized GPS tracking device installed on **MARTY V. MCCAULLEY's** grey Jeep Cherokee. Investigation revealed that **MCCAULLEY's** vehicle was stopped at the

Marriott Courtyard Hotel located at ███ Maplegrove Road, Willoughby Hills, Ohio where it remained for approximately one minute and twenty-four seconds.

3. On February 3, 2017, at approximately 6:44 a.m., agents monitored remote video surveillance positioned in the area of the apartment located at ███ Spruce Trail, Apartment ███ Willoughby Hills, Ohio. Agents observed **MCCAULLEY**'s grey Jeep Cherokee arrive in the area and park in the driveway. A short time later, agents observed **MCCAULLEY** exit the vehicle and enter the apartment through the garage.

4. At approximately 6:47 a.m., agents observed **MCCAULLEY** exit the garage and enter the front driver's side of his Jeep Cherokee. A short time later, the garage door went down and **MCCAULLEY** departed the area.

5. On February 3, 2017, at approximately 6:53 a.m., agents monitored the court authorized GPS tracking device installed on **MCCAULLEY**'s vehicle, which reported its location as being at the Marriott Court Yard Hotel located at ███ Maplegrove Road, Willoughby Hills, Ohio.

6. On February 3, 2017, at approximately 7:14 a.m. agents monitored remote video surveillance positioned in the area of the apartment located at ███ Spruce Trail, Apartment ███ Willoughby Hills, Ohio. Agents observed **MCCAULLEY** exit the vehicle and enter the apartment. Agents observed that **MCCAULLEY** was wearing a black coat.

7. At approximately 7:20 a.m., Ohio BCI Special Agent Stranahan observed **MCCAULLEY**'s Jeep Cherokee parked in the driveway of the apartment located at ███ Spruce Trail, Apartment ███ Willoughby Hills, Lake County, Ohio.

8. On February 3, 2017, at approximately 7:49 a.m., agents monitored remote video surveillance in the area of the apartment located at ███ Spruce Trail, Apartment ███

4

Willoughby Hills, Ohio. Agents observed **MCCAULLEY** and an unidentified Hispanic male exit the apartment through the garage. **MCCAULLEY** entered the front driver's side of the Jeep and the unidentified Hispanic male entered the front passenger's side. **MCCAULLEY's** Jeep then departed the area.

9. At approximately 7:51 a.m., Ohio BCI Special Agent Stranahan observed **MCCAULLEY's** vehicle arrive at the Shell gas station located at the intersection of State Route 91 and State Route 84 in Willoughby Hills, Lake County, Ohio. Special Agent Stranahan observed **MCCAULLEY** and the unidentified Hispanic male exit the vehicle and enter the gas station. Special Agent Stranahan observed the Hispanic male was wearing a blue coat, blue pants and a blue baseball hat.

10. A short time later, Special Agent Stranahan observed the **MCCAULLEY** and the unidentified Hispanic male exit the gas station. Special Agent Stranahan observed the Hispanic male was carrying a white plastic bag. A short time later, both individuals entered the Jeep Cherokee and departed the area.

11. At approximately 7:58 a.m., Special Agent Stranahan observed **MCCAULLEY's** Jeep Cherokee arrive in the parking lot of the Marriott Courtyard hotel and park in front of the entrance. A short time later, the unidentified Hispanic male exited the front passenger's side of the Jeep and entered the hotel.

12. Affiant and his colleagues determined that the unidentified Hispanic male entered room number 223. Subsequent investigation revealed that the room was rented in the name of J▮▮▮ C▮▮▮

13. On February 3, 2017, at approximately 11:13 a.m., agents observed the unidentified Hispanic male and an unidentified Hispanic female exit the Marriott

5

Courtyard Hotel. Special Agent Stranahan observed the unidentified male was wearing the same clothing as previously described in this affidavit. Special Agent Stranahan also observed the unidentified male was carrying a small child. Agents observed the unidentified Hispanic male and female walk to the Cracker Barrel restaurant located near the Marriott Courtyard Hotel.

14. On February 3, 2017, at approximately 11:57 a.m., agents observed **MCCAULLEY** arrive at his residence located at ███ Lyndhurst Road, Lyndhurst, Ohio.

15. At approximately 12:15 p.m., agents observed **MCCAULLEY**'s vehicle depart his residence.

16. At approximately 12:26 p.m., agents observed the unidentified Hispanic male and female exit the Cracker Barrel restaurant and walk to the CVS pharmacy located at the intersection of State Route 91 and Maplegrove Road.

17. At approximately 12:29 p.m., agents observed **MCCAULLEY**'s Jeep Cherokee arrive at the Marriott Courtyard Hotel located at ███ Maplegrove Road, Willoughby Hills, Ohio. Agents observed **MCCAULLEY** exit his vehicle carrying a large duffel bag. Agents observed **MCCAULLEY** enter the hotel carrying the duffel bag. A short time later, agents observed **MCCAULLEY** knock on the door of room 223. **MCCAULLEY** received no response, exited the hotel, returned to his vehicle and drove to the Texas Road House Restaurant. Agents observed **MCCAULLEY** and a black female, possibly J███ M███ exit the Jeep Cherokee and enter the restaurant.

18. On February 3, 2017, at approximately 12:42 p.m., agents observed the unidentified Hispanic male, female, and the child, return to the hotel and enter room 223.

6

19. At approximately 1:25 p.m. agents observed **MCCAULLEY's** vehicle arrive at the Marriott Courtyard Hotel. A short time later, **MCCAULLEY** entered the hotel carrying a large black duffel bag. Agents observed **MCCAULLEY** carry the same large duffel bag into room 223.

20. At approximately 1:34 p.m. agents observed **MCCAULLEY** exit the hotel without the duffel bag, return to his vehicle and depart the area.

21. On February 3, 2017, at approximately 1:39 p.m., agents observed **MCCAULLEY** arrive at the apartment located at ███ Spruce Trail, Apartment ███ Willoughby Hills, Ohio. A short time later, the garage door went up and **MCCAULLEY**, then backed the white 2011 Jeep Wrangler out of the garage and depart the area.

22. At approximately 1:44 p.m., agents observed **MCCAULLEY** arrive at the Walgreen pharmacy located near the intersection of State Route 91 and State Route 84. Agents observed **MCCAULLEY** enter the store, purchase rubber gloves and depart the area on foot.

23. On February 3, 2017, agents observed a semi-truck bearing Texas Registration ███ and Maine Trailer registration number ███ arrive in the area. Agents observed the semi-truck arrive at the Marriott Courtyard hotel. A short time later, agents observed the unidentified Hispanic male from room 223, meet with an individual from the semi-truck. Agents observed the unidentified Hispanic male obtain a large blue duffel bag from an individual inside of the semi-truck. The male then went back inside of the hotel. At approximately 2:03 p.m., agents observed the semi-truck depart the area.

24. On February 3, 2017, agents observed **MCCAULLEY**'s Jeep arrive at the Marriott Courtyard Hotel. A short time later, agents observed the unidentified Hispanic male, female, and child exit the hotel and enter the Jeep Cherokee. Agents were unable to see if any of the individuals carried a duffel bag as they entered **MCCAULLEY**'s Jeep.

25. At approximately 2:25 p.m., agents observed the semi-truck parked on the entrance ramp to Interstate 90 westbound. It should be noted that the apartment located at ▆ Spruce Trail, Apartment ▆ Willoughby Hills, Ohio, is located a very short distance from the freeway entrance ramp.

26. At approximately 2:20 p.m., agents observed the garage door of the apartment located at ▆ Spruce Trail, Apartment ▆ Willoughby Hills, Ohio, open. A short time later, agents observed **MCCAULLEY**'s Jeep Cherokee enter the garage and then the garage door closed.

27. On February 3, 2017, at approximately 2:33 p.m., agents observed an unidentified individual running through the backyard of the apartment located at ▆ Spruce Trail, Apartment ▆ Willoughby Hills, Lake County, Ohio carrying a bag. Agents observed the unidentified male hand the bag to the individual inside of the semi-truck. The semi-truck then departed the area.

28. At approximately 3:33 p.m., Ohio State Highway Patrol Trooper Brian McGill observed the semi-truck bearing Texas Registration ▆, and Maine trailer registration number ▆ commit a marked lanes infraction (in violation of Ohio Revised Code 4511.33.)

8

29. At approximately 3:34 p.m., Trooper McGill conducted a traffic stop on the semi-truck bearing Texas Registration ▮▮▮ and Maine Trailer registration number ▮▮▮, on Interstate 80, west bound, near mile post 139, Amherst Township, Lorain County, Ohio.

30. During the course of the traffic stop, Trooper McGill utilized his Ohio Certified Narcotics Detection Canine "Edo" to conduct an exterior sniff of the semi- truck and trailer. Trooper McGill observed a positive alert from his Canine Partner "Edo" to the presence of the odor of narcotics in the vehicle.

31. Based on the alert of the canine, Trooper McGill conducted a search of the cab of the semi-truck, and located a large black duffle style bag on the front seat passenger seat of the truck, containing thirty-four (34) rubber banded bundles of United States Currency.

32. A continued search of the truck revealed seven (7) individually wrapped black bricks, which were located under the "sleeper" bed of the truck cab. Your Affiant conducted a presumptive test from one of the seized bricks which yielded a positive result for the presence of cocaine. A gross weight of the bricks was approximately 7.9 kilograms.

33. Trooper McGill advised Your Affiant hat he identified the driver of the truck as **ADALFO MAYA MAGADAN**. Trooper McGill read **MAGADAN** his Miranda Rights, and began to question **MAGADAN**. **MAGADAN** told Trooper McGill that he was traveling from Cleveland, Ohio to Chicago, Illinois for the weekend. When questioned about the U.S. currency located in the truck, **MAGADAN** stated that it was not his and someone placed it in the truck, whom he refused to identify. **MAGADAN** advised Trooper McGill that he knew nothing about the seven bricks located inside the sleeper

9

area of his truck. MAGADAN then refused to answer any more questions and was processed and transported to the Lorain County Jail for detention.

34. At approximately 7:00 p.m., S/A Shaun Moses and S/A Rande Rinehard approached the unidentified Hispanic male from room 223 in the lobby of the Courtyard Marriott Hotel ▮ Maplegrove Road, Willoughby Hills, Ohio.

35. S/A Moses and S/A Rinehard identified the Hispanic male as **RENE BALLIN SERNA**. SERNA was read Miranda warnings by S/A Rinehard and S/A Moses. SERNA stated he understood his rights and wished to cooperate with agents.

36. SERNA advised agents he had traveled from Chicago, Illinois to Willoughby Hills, Ohio to oversee a cocaine transaction between **MARTY V. MCCAULLEY** and **MAGADAN**. SERNA was to be paid $1,000 in United States currency for overseeing the exchange. SERNA stated earlier that day, MCCAULLEY dropped off a bag containing approximately $110,000 in United States currency at his hotel room.

37. SERNA stated that MAGADAN arrived at the hotel and gave SERNA a bag that contained six kilos of cocaine. SERNA then gave MCCAULLEY the six kilos of cocaine. MCCAULLEY and SERNA transported the six kilograms of cocaine to his apartment located at ▮ Spruce Trail, apartment ▮ Willoughby Hills, Ohio. MCCAULLEY then weighed and repackaged the kilograms of cocaine into gallon sized Ziploc style bags.

38. MCCAULLEY gave SERNA a bag that contained a large sum of United States currency. SERNA then walked through MCCAULLEY's backyard to the Interstate 90 on ramp. SERNA gave the bag of money to MAGADAN.

39. SERNA advised that MCCAULLEY then contacted CARL D. PENNY, who SERNA knew as "Black." PENNY arrived at MCCAULLEY'S apartment in a 2016 Dodge Charger bearing Illinois Registration ▮ registered to Enterprise Rental, rented by PENNY. MCCAULLEY then instructed PENNY to entertain SERNA, C▮ and the child. PENNY told MCCAULLEY that he should just have a taxi take them around. SERNA advised that PENNY took them to a mall and to a Mexican restaurant. PENNY then dropped them back off at the hotel.

40. Agents maintained surveillance of PENNY until he arrived at his apartment located at ▮ River Oaks Road, Rocky River, Cuyahoga County, Ohio.

41. Agents observed PENNY exit his vehicle and walk toward the entrance door to the apartment building. An agent acting in an undercover capacity followed PENNY into the apartment building. Agents observed that PENNY seemed alerted to the undercover agent's presence and reluctantly entered apartment number ▮

42. A short time later, agents observed PENNY, exit the apartment building and enter the front driver's side of his rented Dodge Charger. Agents maintained surveillance as PENNY departed the area and arrive at a near-by BP gas station. Agents observed that PENNY was moving around inside the vehicle and looking around the area.

43. Agents observed PENNY, exit the vehicle, walk around the vehicle and open the trunk. He then closed the trunk, entered the front driver's side of the rented Dodge Charger and depart the area.

44. Agents observed PENNY park his vehicle a short distance away from the BP gas station on a side street (public roadway) near a grocery store.

45.  Agents observed **PENNY** exit the vehicle carrying a bag in his hands. Agents then approached **PENNY** and took him into custody.

46.  Located inside the bag at the time of his arrest were three digital scales, thousands of rubber bands, and plastic bags.

47.  Agents advised **PENNY** of his rights. At this time, **PENNY** declined to make a statement and asked to speak with an attorney.

48.  Agents then obtained a State of Ohio search warrant for **PENNY's** apartment. Located in the apartment during the execution of the search warrant were records and documents, cellular telephones, and a "trap" in the floor of the master bedroom closet.

49.  Agents then obtained a search warrant for **PENNY's** rented Dodge Charger. Located in the trunk of **PENNY's** Dodge Charger was a brief case containing a large amount of United States Currency bundled with rubber bands. Agents also located two additional plastic bags each containing an undetermined amount of United States currency.

## CONCLUSION

50.  Based on the aforementioned facts and information, Affiant has probable cause to believe that **CARL D. PENNY** knowingly and intentionally conspire to possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Rachel L. Hanley
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this 6th day of February, 2017.

*[signature]*

United States Magistrate Judge
Northern District of Ohio
Eastern Division